**In re ISC FINANCIAL CORPORATION, Debtor.**

**Bankruptcy No. 77–01226–B–W–1.**

United States Bankruptcy Court, W. D. Missouri, W. D.

Dec. 19, 1980.

Order Denying Motion for Rehearing and Reconsideration Feb. 27, 1981.

Gene A. DeLeve, Berman, DeLeve, Kuchan and Chapman, Kansas City, Mo., for debtor.

Charles Frisbie, Kansas City, Mo., Chairman, Creditor's Committee.

Sheldon B. Mazor, Constantine C. Harvalis, Chicago, Ill., for Securities & Exchange Commission.

Abraham E. Margolin, Kansas City, Mo., for receiver.

ORDER ALLOWING FEES AND EXPENSES TO THE ATTORNEY FOR THE DEBTOR

FRANK P. BARKER, Jr., Bankruptcy Judge.

Gene A. DeLeve, Attorney for the debtor, has requested $625,000 in fees plus reimbursement of expenses in sum of $4,524.12. No attorney fees were paid over the three-year life of this case, (except a $15,000 retainer), until an interim allowance of $300,000 was authorized after notice and hearing on October 30, 1980.

Mr. DeLeve in his application indicates that the normal charges for the services of counsel for the debtor would be approximately $311,041.25 for 3,809 hours or an average hourly rate of $81.83. The requested fee, however, doubles this standard charge. In fact, it is substantially higher than the average fee requested by counsel for the Receiver.

The Court will adopt the factual allegations in Mr. DeLeve's Application as its findings of fact as it would serve no useful purpose to detail again the complex and myriad problems encountered by the debtor, all successfully resolved.

■ Counsel for the debtor urges the Court to fix his fee by the use of multipliers as is done in class-action cases. See *Lindy Bros. Builders, Inc. of Phila., et al. v. American Radiator & Standard Sanitary Corp., et al.*, 487 F.2d 161 (3rd Cir. 1973).

I see no compelling reason to do so; in fact, such would appear to be contrary to the Bankruptcy Act. See Rule 219 and Rule 11–31, FRBP, as well as the numerous cases under the Act regarding attorney fees in bankruptcy cases.

In the case at bar I find no reason to conclude that there was any real "contingency" about the payment of costs of administration, or if there was any, it was so slight as to be minimal. It is also noted that a $15,000 retainer fee was paid to Mr. DeLeve prior to filing the case.

■ Several matters do disturb me: (1) As pointed out by the SEC it appears that 75% of the total time spent on this case by Mr. DeLeve's firm was attributed to him at a $90 normal hourly rate. Was it really necessary for a senior partner to personally do 75% of the work or could not more of it have been delegated to associates? (2) In addition to the attorney for the debtor, there was a Receiver, his Counsel and an active Creditor's Committee. On occasions, the principals mentioned above were in an adversary position. If this case had been converted to a Chapter X case doubtless the shareholders of ISC would have been wiped out and a great deal of Mr. DeLeve's time was spent in successfully litigating this question.

And, as always happens in a complex case, there being no clear-cut guidelines as to the Receiver's duties and the debtor's responsibilities, there is bound to be some duplication of effort.

In a separate order the Court has allowed compensation to the attorneys for the Receiver in sum of $500,000. While the total time was 4,869 hours, which is significant and was given consideration, the Court's main reason for allowing more than a "usual fee" was that ISC was not an ordinary case. Second, in the Court's judgment, $500,000 was a reasonable fee for the services rendered.

To be consistent, I must also find in Mr. DeLeve's case, that ISC was not an ordinary case and that a fee higher than normal should be allowed. What bothers me is that Mr. DeLeve was representing the debtor and its shareholders, not the creditors. In this respect he did an outstanding job and the shareholders should be beholden to him. The point I'm trying to make is that I'm not persuaded that the creditors (whose money it is that is paying his fees) should be charged because he did such fine representation for the company.

My remarks should not be construed to infer that Mr. DeLeve did not have creditors in mind during these proceedings. I know for a fact from my personal contact with him over these three years that such was not the case. On the other hand, he was in an adversary position much of the time with the Creditor's Committee and devoted many hours to defending the principals of ISC against charges made by the SEC for violations of the Securities & Exchange Act. I have serious reservations that this time should even be compensated for at the expense of the creditors.

On the other hand, no fees were allowed Mr. DeLeve over the three-year period. During this time inflation set in and the Consumer Price Index rose substantially. While it may appear that the Court is taking away compensation on the one hand and giving it back on the other, such is not the fact. I am only trying to set down my thoughts and processes in arriving at a reasonable fee for counsel for the debtor under all the facts and circumstances of this case. This task is not only difficult but distasteful. Mr. DeLeve and his law firm are experts in the field of bankruptcy reorganization cases and the creditors and stockholders were fortunate to have lawyers of Mr.

DeLeve's and Mr. Margolin's caliber to represent them.

Based upon all of the foregoing, and taking into consideration the unusual amount of senior partner's time, the sometimes adversary position between counsel for the debtor versus the creditors and Creditor's Committee, the total number of hours of all partners, associates, law clerks, para-legals, etc., and the outstanding results accomplished, I conclude that a reasonable fee is $400,000. It is

ORDERED, that Gene A. DeLeve is allowed total attorney fees of $400,000 for all services rendered up to and including November 1, 1980 of which $315,000 has been paid. It is

FURTHER ORDERED, that Gene A. DeLeve be reimbursed for expenses actually incurred in sum of $4,524.12.

### ORDER DENYING MOTION FOR REHEARING AND RECONSIDERATION

Counsel's Motion for Rehearing and Reconsideration of this Court's Order fixing his attorney fees at $400,000 versus the $625,000 requested and his 37-page brief including footnotes, probably deserves a longer and more detailed response than the Court intends to give.

Suffice it to say that none of the various factors mentioned in the cases cited were overlooked. I did not reduce or penalize counsel for the debtor by disallowing time or reducing the value of their services. Nor did the fact that Mr. DeLeve was responsible for 75% of the time charges have any bearing on my conclusion.

I did not apply the *Lindy* theory or any other theory of multiples. Simply stated, I followed Bankruptcy Rule 11–31 and Rule 219(c)(1) and then considered the outstanding results and the rise in the cost of living.

At the time of considering Mr. DeLeve's application, I also had under consideration that of the attorney for the Receiver. Both counsel worked long and hard on this case. I finally concluded that an allowance of $100.00 per hour for all time spent by all partners, associates, para-legals, etc. would fairly and adequately compensate both counsel.

In the case at bar 3,801.25 hours was involved which came to $380,125. This I increased by approximately $20,000 to reach $400,000.

I did the same on Mr. Margolin's fee. His application showed 4,869 total hours. This comes out to $486,900 which I increased by some $13,000 to the $500,000 allowance.

There was no attempt on my part to find that one attorney contributed to the successful reorganization more than the other; both did a remarkable job.

In my judgment both allowances were fair and reasonable. To have done otherwise would have been unfair and unreasonable.

In the case at bar I could have taken other routes to reach the $400,000 conclusion. For example, I could have easily found that the customary rates from $45 to $100 an hour were excessive when undertaking a bankruptcy case. I could have found that instead of $100 an hour for Mr. Berman, $75 would be allowed; for Mr. DeLeve $65 an hour, etc. This method would have probably worked out to a so-called "lode star" fee of something in the neighborhood of $250,000. I could have then used some multiple to add another 50% and reached the same allowance of $400,-000. Perhaps I should have taken that route and that would have ended the question. In a pre-Code case, the 8th Circuit would have affirmed in a minute under the firmly established bankruptcy case law unless it would reduce the fee under the "economic spirit" rule.

In the final analysis it apparently boils down to this: the Court has one idea of what is a reasonable fee and counsel has another. So be it. This Court does not believe that the *Lindy* doctrine has any application to bankruptcy cases.

I would be remiss if I did not publicly state that Mr. DeLeve's application for fees and accompanying briefs and exhibits are

**10**

the finest I have ever seen in my twelve years on the bankruptcy bench. My only regret is that I cannot see my way clear to increase his allowance.

The Motion for Rehearing and Reconsideration is denied.